# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1299-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.A.,

     Defendant-Appellant,

and

C.W.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF An.A
and Al.A.,

     Minors.

_____

Submitted February 3, 2020 – Decided March 3, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0230-18.

Joseph E. Krakora, Public Defender, attorney for appellant S.A. (Robyn A. Veasey, Deputy Public Defender, of counsel; Louis W. Skinner, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Ellen L. Buckwalter, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Margo E.K. Hirsch, Designated Counsel, on the brief).

PER CURIAM

Defendant S.A. (Sarah)[1] appeals from a Family Part order terminating her parental rights to her two daughters, An.A. (Andrea), born in August 2013, and Al.A. (Amy), born in March 2015. The children's biological father, C.W., executed an identified surrender of his parental rights to his mother, D.C., who has served as the children's resource parent since their March 2017 removal from Sarah's care and who intends to adopt the children.

---

[1] We employ initials and pseudonyms to protect the privacy of the children and for ease of reference. R. 1:38-3(b)(12).

A-1299-18T3

Sarah contends the New Jersey Division of Child Protection and Permanency (Division) failed to present sufficient evidence clearly and convincingly establishing the four prongs of the best interests of the child standard. See N.J.S.A. 30:4C-15.1(a). We have reviewed the record, agree with the Division and Law Guardian there is substantial credible evidence supporting the court's determination that termination of Sarah's parental rights is in the children's best interests, and affirm substantially for the reasons set forth in Judge Radames Velazquez, Jr.'s thorough written opinion.

During the guardianship trial, the Division presented evidence and testimony from D.C.; Division caseworker, Jasmine Soto; Dr. Elizabeth Stillwell, Psy.D., who was qualified as an expert in forensic psychology; and Dr. Samiris Sostre, M.D., who was qualified as an expert in forensic psychiatry. Sarah did not attend the trial or present any witnesses or evidence.

Judge Velazquez made detailed factual findings, addressed each element of the best interests standard set forth in N.J.S.A. 30:4C-15.1(a), and concluded the Division sustained its burden by presenting clear and convincing evidence it was in the children's best interests to terminate Sarah's parental rights. We find sufficient support for, and presume the parties' familiarity with, Judge Velazquez's findings, which we briefly summarize.

A-1299-18T3

Judge Velazquez found the Division "presented substantial and persuasive evidence that the children's health and development has been and will continue to be endangered" by the parental relationship with Sarah, due to her "untreated severe mental illness, parental neglect, and housing instability," and that the children had suffered, and would continue to suffer harm, as a result of Sarah's inability to parent and her lack of stable housing.

The court noted Dr. Stillwell's and Dr. Sostre's unrebutted testimony Sarah suffered from schizoaffective disorder, bipolar type, and her refusal to comply with recommendations for treatment and prescriptions for medication rendered her unable to safely parent the children. The court also found Sarah suffered from cognitive impairments that rendered her unable "to understand how her actions demonstrated poor judgment and parenting skills," and her lack of insight into her mental health issues posed additional risks of harm to the children because "she [does not] understand why she should be concerned" about the treatment of her mental health issues. The judge determined Sarah's failure to comply with treatment and refusal to take medications prescribed to ameliorate the effects of her significant mental health issues placed the children at "substantial risk of harm" and "ensures that [she] will be increasingly unable to provide a stable and healthy home for her children in the future." The court

relied on Dr. Sostre's testimony that, without medication, there was a 100 percent chance Sarah would experience additional psychotic episodes that "will increase in severity and frequency."

Judge Velazquez further found the Division presented clear and convincing evidence Sarah is unable and unwilling to address the harm to the children. Relying on the unrebutted expert testimony, the judge found Sarah's parenting deficits "are inextricably connected to her chronic mental illness, and her refusal to treat her schizoaffective disorder through psychotropic medication" and her "inability to understand and appreciate her symptoms[,] cause[] her to lack the motivation needed to address and treat her mental illness." Relying on Dr. Stillwell's testimony, Judge Velazquez further determined that the children have a strong and secure bond with D.C., and they will suffer additional harm if the permanency that adoption by D.C. will provide is further delayed.

The judge also detailed the services the Division offered and provided Sarah to assist her in addressing the circumstances leading to the children's removal and placement with D.C., and he considered the reasonableness of the Division's efforts to provide services "in the context of [Sarah's] unwillingness to address her mental illness, which was a necessary step towards stabilization

A-1299-18T3

and reunification." Judge Velazquez noted the Division made referrals for Sarah to a parent mentor program, parenting skills classes, homemaker services, individual therapy, and for psychological, psychiatric, and intellectual assessments and evaluations. The Division further provided housing assistance to facilitate Sarah's transition from shelters and health care facilities to her own apartment, and it offered services "focused on stabilizing [her] mental health and addressing her parenting skills."

As noted by the court, at times Sarah utilized the services and appeared to make progress towards addressing the issues preventing her from providing the children with a safe and secure home. However, Sarah's consistent inability and unwillingness to comply with services and address her mental health issues through treatment and taking prescribed medications rendered her unable to parent her children.

The court also found termination of Sarah's parental rights would not do more harm than good based on Dr. Stillwell's unrebutted psychological and bonding evaluations and testimony; Sarah's unwillingness to address her mental health issues; and D.C.'s willingness to provide permanency through adoption. Without contradiction, Dr. Stillwell testified that a break in the bond between the children and D.C. "would pose a far greater potential for harm than a break

A-1299-18T3

from" Sarah and would cause "significant and enduring harm" to the children's emotional and behavioral development. The court accepted Dr. Stillwell's testimony that the children share a positive, but inconsistent and insecure, bond with Sarah, and they enjoy a positive, secure, and strong bond with D.C., who the children view as their psychological parent and who provides nurture and guidance. The court also found Sarah's mental health issues, and her unwillingness and inability to effectively address them, make it unlikely she will be able to safely parent the children at any time in the foreseeable future.

Following the court's entry of the October 31, 2018 judgment of guardianship, Sarah appealed. She offers the following arguments for our consideration:

> [POINT I]
>
> THE [TRIAL] COURT ERRED IN ITS CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS IS IN THE BEST INTERESTS OF THE CHILDREN UNDER N.J.S.A. 30:4C-15.1[(a)].
>
> I. THE COURT . . . ERRED IN CONCLUDING THAT ANDREA AND AMY WERE HARMED BY [SARAH][.]
>
> II. THE COURT . . . ERRED IN CONCLUDING THAT [SARAH] IS UNWILLING OR UNABLE TO ELIMINATE THE ALLEGED HARM FACING

A-1299-18T3

ANDREA AND AMY OR TO PROVIDE A SAFE AND STABLE HOME[.]

III. THE COURT . . . ERRED IN CONCLUDING THAT [THE DIVISION] EXERCISED REASONABLE EFFORTS TO PROVIDE SERVICES TO HELP [SARAH] TO CORRECT THE CIRCUMSTANCES THAT LED TO PLACEMENT OUTSIDE THE HOME[.]

IV. THE COURT'S CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD IS ERRONEOUS[.]

Our review of a trial court order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "A Family Part's decision to terminate parental rights will not be disturbed when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 368 (App. Div. 2015) (citing N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448 (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). This enhanced deference is particularly appropriate where the court's findings are founded upon the credibility of the witnesses' testimony. N.J. Div.

8

of Youth & Family Servs. v. H.B., 375 N.J. Super. 148, 172 (App. Div. 2005) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., 191 N.J. at 605). No deference is given to the trial court's "interpretation of the law," which we review de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

A parent has a constitutionally protected right "to enjoy a relationship with his or her child." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447 (citing E.P., 196 N.J. at 102). A parent's interest must, at times, yield to the State's obligation to protect children from harm. See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009).

A-1299-18T3

When terminating parental rights, the court must consider the "best interests of the child[ren]." K.H.O., 161 N.J. at 347. The Division's petition to terminate parental rights may only be granted if the following four prongs enumerated in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence:

> (1)   The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)   The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3)   The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4)   Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a

A-1299-18T3

comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "[T]he cornerstone of the inquiry [under N.J.S.A. 30:4C-15.1(a)] is not whether the biological parents are fit but whether they can cease causing their child harm." In re Guardianship of J.C., 129 N.J. 1, 10 (1992) (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 607 (1986)).

Sarah argues the court erred by terminating her parental rights because the Division failed to present sufficient evidence clearly and convincingly establishing each prong of the best interests standard. We disagree. Judge Velazquez conducted the required fact-sensitive analysis of the statutory factors, see K.H.O., 161 N.J. at 348, and the record supports his determination that Sarah's unwillingness and inability to address her significant and debilitating mental health issues—by failing to comply with treatment recommendations and take prescribed medications—renders her incapable of parenting Andrea and Amy; caring for them; addressing their needs; and providing for their safety, health, and development.

The court accepted the expert testimony Sarah lacked both the ability and willingness to address the issues that rendered her unable to safely parent her children, and the testimony was unchallenged by any competent evidence. We defer to Judge Velazquez's findings because they are supported by substantial

credible evidence, and his factual findings amply support his conclusion the Division satisfied each prong of the best interests standard with clear and convincing evidence. See E.P., 196 N.J. at 104 ("We will not disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings."). We add only the following brief comments.

We reject Sarah's claim the evidence was insufficient to support the court's finding the children suffered harm or were at risk of harm under prongs one and two of the best interests standard. "Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992).

The evidence established Sarah failed and refused to participate in treatment and take the prescribed medications required to address her mental health issues, and the concomitant delays in her ability to parent Andrea and Amy and provide them with a safe and secure home caused the children emotional and psychological harm and placed them at risk of future harm. That evidence supports the court's findings under the first and second prongs of the best interests standard. See, e.g., F.M., 211 N.J. at 450-51 (stating that untreated

mental illness that threatens harm to a child may disqualify a parent from raising the child); K.H.O., 161 N.J. at 353 (stating "the second prong may be met by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, the inability to provide a stable and protective home, [and] the withholding of parental attention and care").

We are not persuaded by Sarah's claim the court erred by finding the Division provided reasonable services. "The diligence of [the Division's] efforts on behalf of a parent is not measured by their success," In re Guardianship of DMH, 161 N.J. 365, 393 (1999), particularly where the lack of success results from a parent's "failure to cooperate or follow through." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div. 2004). The record evidence demonstrates the Division provided reasonable services in light of Sarah's individual needs.

Last, Sarah makes no showing the court erred by finding the Division sustained its burden of establishing prong four of the best interests standard. The court recognized Sarah enjoyed a positive bond with Andrea and Amy, but the fourth prong does not require a "showing that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355. Dr. Stillwell's bonding evaluations and expert testimony support the court's

13

conclusion that termination of parental rights would not do more harm than good.

Any of Sarah's arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1299-18T3